**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

- - - - - - - - - - - - - - - - - - - - - - - - - -X

In re:

Therese Pearman,

        Debtor.                             Chapter 7
                                             Case No. 09-20730 (KCF)

- - - - - - - - - - - - - - - - - - - - - - - - -X

Kay Berry, Inc.,

        Plaintiff,

        vs.                                  Adversary No. 09-2186

Therese Pearman,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - -X        **OPINION**

**APPEARANCES:**

Attorneys for Plaintiff
Joseph R. Zapata, Jr., Esquire
Fox Rothschild, LLP
997 Lenox Drive - Building 3
Lawrenceville, New Jersey 08628

Irina B. Elgart, Esquire
Fox Rothschild, LLP
997 Lenox Drive - Building 3
Lawrenceville, New Jersey 08628

Attorney for Defendant
Andre L. Kydala, Esquire
12 Lower Center Street
PO Box 5537
Clinton, New Jersey 08809

Kay Berry, Inc. ("Kay Berry") filed a complaint against the Debtor, Therese Pearman, seeking to exclude an unliquidated debt owed by Ms. Pearman from her discharge. Count II of the Complaint seeks to liquidate the damages owed to Kay Berry, Inc., including seeking an award of costs and attorneys fees incurred in connection with the defense of the Copyright Action pursuant to § 505 of the Copyright Act. *See,* 17 U.S.C. § 505. In Count I, the Complaint seeks to except any resulting debt from discharge pursuant to § 523(a)(6) of the Bankruptcy Code. *See,* 11 U.S.C. § 523(a)(6). The Court *sua sponte* bifurcated the trial to determine the dischargeability count first. The case is a no-asset Chapter 7 that was closed after being fully administered by the Trustee. The Trustee filed a Report of No Distribution indicating that there was no non-exempt property available for distribution to creditors, so there is no point in determining the amount of Kay Berry's claim if it is subject to discharge. Count III of the Complaint asks this court to provide notice of the District Court's Order dismissing the Debtor's substantive claims to the Registrar of Copyright.

Facts

Kay Berry's claim for damages arose in connection with its commercial use of a poem entitled "Golden Heart (For My Pop-Pop.)" Ms. Pearman claims that she is the author of the poem, as well as the holder of a legitimate copyright. Ms. Pearman, then known as Ms. Williamson, lost both of her grandparents within weeks of each other in 1989. She recalls trying to collect her thoughts about her loss over a period of months thereafter, and eventually writing the following poem:

> God saw you getting tired,
> And a cure was not meant to be
> So he put His arms around you
> And whispered "come to me."
> With tearful eyes we watched you,

As we saw you pass away
Although we loved you deeply,
We could not make you stay
Your golden heart stopped beating,
Hard working hands at rest.
God broke our hearts to prove to us
He only takes the best.

("Poem").  After she was satisfied with her Poem, Ms. Pearman shared it with her mother and aunts.

She shared the Poem with others over the years, though never at a cost.

Because the Poem was so well-received, Ms. Pearman testified that she submitted the Poem

to the National Poetry Society ("NPS") for possible publication in its volume "A View From Afar."

When NPS selected the Poem for publication, Ms. Pearman testified that NPS suggested that she

register a copyright for the Poem, and gave her information about the copyright registration office.

With the help of that office, Ms. Pearman filed a copyright registration on January 14, 1998. Ms.

Pearman testified that the copyright office told her that she was responsible for protecting her

copyrighted material, which included her exact words and any reasonable approximation. Ms.

Pearman did not receive a fee for the NPS publication of the Poem.

At some time thereafter, a friend informed Ms. Pearman that her Poem appeared in "Chicken

Soup for the Christian Soul: 101 Stories to Open the Heart and Rekindle the Spirit" ("Chicken

Soup") without attribution. Ms. Pearman then contacted the publisher to inform it that she held the

registered copyright on the Poem. When presented with the copyright registration, the publisher of

"Chicken Soup" changed the attribution in the next run to reflect Ms. Pearman's authorship. The

publisher also sent Ms. Pearman a check for $500, explaining that this was its "customary"

remuneration for such poems.

In 2008, Ms. Pearman's mother mentioned that she had seen a segment on "The Oprah

Winfrey Show" about The Comfort Company, a retailer specializing in grief support products. Ms. Pearman testified that her mother thought that Ms. Pearman should contact The Comfort Company about using the Poem.  Ms. Pearman searched the internet for The Comfort Company and found that it was already marketing two products that included a portion of the Poem.  She contacted The Comfort Company and requested sales figures and  contact information for the distributor of the products.

The Comfort Company responded to the request for information and also forwarded Ms. Pearman's e-mail to its supplier, Kay Berry, expressing concern about the alleged copyright violation. Charles T. Wesson, the president of the family-owned Kay Berry, contacted Ms. Pearman the next day.  He explained that Kay Berry was in the business of producing stone products, mostly with verse, that it distributed through garden centers, gift shops and on-line retailers, including The Comfort Company. Mr. Wesson indicated that he had recently become aware of the copyright claim and, subject to some verification, wished to work out a licensing arrangement. He and Ms. Pearman exchanged some e-mails and information, and eventually Kay Berry offered to pay Ms. Pearman 5% of its gross sales of the product using her copyrighted materials. Mr. Wesson explained that this offer was consistent with what the company paid other authors and artists for similar licenses.  He asked Ms. Pearman to either forward a draft agreement consistent with those terms or ask for him to supply one.

Mr. Wesson next heard from Ms. Pearman's newly retained attorney, Eric Menhart.  There were additional negotiations about possible licensing arrangements, but the parties were ultimately unable to come to an agreement.  Kay Berry stopped selling its products with the disputed verse immediately after settlement negotiations broke down. Ms. Pearman filed a complaint in the United

States District Court for the District of Massachusetts against Kay Berry, a number of its customers, several other alleged infringers and multiple John Does ("Copyright Action.").

While preparing its defense against the Copyright Action, Kay Berry and its attorney became aware of numerous instances where the Poem was published prior to the time Ms. Pearman claimed to have written the Poem, and well prior to the time she filed the copyright registration. At least one publication was when Ms. Pearman was a toddler. On April 3, 2009, Kay Berry's counsel wrote to Ms. Pearman's counsel including multiple examples of publication indicating that Ms. Pearman could not have written the Poem and asserting that her copyright registration was invalid. The letter threatened to seek costs and attorneys fees under section 505 of the Copyright Act and sanctions under Rule 11 of the Federal Rules of Civil Procedure. In that letter, Kay Berry offered to settle its cost/sanction claims for $20,000.

Mr. Menhart immediately informed Ms. Pearman that he had been presented with evidence that indicated irrefutably that she did not write the Poem. He advised her to withdraw the Copyright Action with prejudice immediately and to let him know if the proposed settlement were acceptable to her. He also indicated that he would be seeking to be relieved as counsel. Ms. Pearman authorized Mr. Menhart to dismiss the complaint, but did not accept the settlement offer because she was unable to make the payment proposed. Ms. Pearman testified that she was so unnerved by the variance between her recollection and the proofs submitted, that she immediately contacted another organization that was in the process of publishing a different poem that she recalled writing and withdrew her permission to publish it.

Mr. Menhart filed a motion to dismiss the Copyright Action on April 7, 2009, and Ms. Pearman filed her Chapter 7 petition on April 29, 2009. The District Court dismissed the Copyright

Action on May 18, 2009, but left all issues as to claims that Kay Berry might have against Ms.

Pearman to be determined by the Bankruptcy Court.

Ms. Pearman is a high school graduate with no experience in copyright law other than as set

forth above.  Mr. Wesson is not an attorney, but as president of Kay Berry,  he has been involved

in negotiating several licensing arrangements regarding intellectual property.

### Discussion

Kay Berry seeks damages pursuant to § 505 of the Copyright Act, which provides that:

> In any civil action under this title, the court in its discretion may allow the recovery
> of full costs by or against any party other than the United States or an officer there.
> Except as otherwise provided by this title, the court may also award a reasonable
> attorney's fee to the prevailing party as part of the costs.

11 U.S.C. § 505.  The statute does not mandate fee shifting.  It permits a court to award fees and

costs to either a prevailing plaintiff or a prevailing defendant based on a consideration of "the degree

of success obtained by the moving party, the frivolousness of any claims, the motivation for the

claims, the objective reasonableness of the factual and legal arguments advanced in support of them

and the need for compensation and deterrence." Jackson v. Sturkie, 255 F. Supp. 2d 1096, 1103-04

(N.D. Cal. 2003).  There are legitimate factual issues to be determined before the Court could enter

an order for such an award.

Due to the intervening bankruptcy proceeding, however, Kay Berry is required to do more

than obtain a judgment under § 505.  Accordingly, Kay Berry  not only seeks a determination that

an award of fees and costs is appropriate here, but that any damages arising out of the Copyright

Action be declared exempt from discharge based on 11 U.S.C. § 523(a)(6).  Unless Kay Berry is

able to establish that any award under § 505 is excepted from discharge, there is little point in fixing

the amount of that claim.

A.  11 U.S.C. § 523(a)(6)

Exceptions to discharge are strictly construed against creditors and liberally construed in favor of debtors. In re Cohn, 54 F.3d 1108, 1113 (3d Cir. 1995).  Additionally, as with other § 523(a) exceptions, the creditor bears the burden of demonstrating nondischargeability by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279 (1991); In re Graham, 973 F.2d 1089, 1101 (3d Cir. 1992) (preponderance of the evidence standard applies to all subsections of 523(a)).

Section 523(a)(6) prevents discharge "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).  Authorities have interpreted the operative language in § 523(a)(6) as embodying two distinct requirements; willfulness and malice. Alan N. Resnick & Henry J. Sommer, 4 Collier on Bankruptcy ¶ 523.12[2] (16th ed. 2009); In re Fechnay, 425 B.R. 212 (Bankr. E.D. Pa. 2010).  Accordingly, a creditor had the burden to establish both willfulness and malice.  In re Ormsby, 591 F.3d 1199 (9th Cir. 2010).

1) Willful injury

The analysis in many § 523(a)(6) cases blurs the line between the "willful" and "malicious" requirements.  When reduced to its essence, however, the willful prong of § 523(a)(6) is quite straightforward.  To be "willful" the debtor's actions "must have been voluntary and deliberate." Viener v. Jacobs (In re Jacobs), 381 B.R. 128 (Bankr. E.D. Pa. 2008).  Actions that are merely negligent or reckless will not suffice.  *See,* In re Ingui, 2006 WL 637139 *2, n. 2 (Bankr. E.D. Pa. 2006) (citing Kawaauhau, 523 U.S. at 64). *See also*, In re Conte, 33 F.3d 303, 307 (3d Cir. 1994) ("for the injury to have been "willed" by the debtor, it must at least have been substantially certain to result from the debtor's act.").  The United States Supreme Court has clarified that the word

"willful" modifies the word "injury," therefore, nondischargeability under § 523(a)(6) "requires a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." Kawaauhau v. Geiger, 523 U.S. 57, 61 (1998).

This case is unusual in that the Debtor was the plaintiff seeking enforcement of a copyright, and the Defendant a prevailing party now seeking costs. Most cases involving bankruptcy debtors involve copyright infringement by a debtor, making an analysis of whether the debtor willfully and maliciously violated another's copyright more straightforward.  In the complaint at issue here, Kay Berry identifies the commencement of the Copyright Action as the willful and malicious action by Ms. Pearman, but also argues that it is exceedingly unlikely that Ms. Pearman could have honestly believed at any time that she wrote the Poem.

Regardless of what Ms. Pearman may have believed at the time she recalls writing the Poem, the Court can clearly find that Ms. Pearman acted willfully when she filed the complaint initiating the Copyright Action: the filing of the complaint was voluntary and Ms. Pearman intended the resulting injury - that is, she intended whatever would flow naturally from taking legal action to protect her copyright.

2) Malicious injury

The next prong Kay Berry must prove is that the Debtor acted maliciously when she filed the Copyright Action.  In a previous unpublished opinion, this Court speculated on what the parameters of § 523(a)(6) are in this Circuit after the Supreme Court's decision in Kawaauhau v. Geiger (In re Geiger), 523 U.S. 57 (1998).  The opinion noted that although "the Third Circuit has not ruled on this issue post-Kawaauhau, courts in this Circuit have concluded that the Third Circuit would in all likelihood retain the objective approach it endorsed in Conte v. Gautam (In re Conte),

33 F.3d 303 (3d Cir. 1994)." <u>Sinyakov v. Pavlovskiy (In re Pavlovskiy)</u>, 2007 WL 2048965 (Bankr.

D.N.J. July 11, 2007).   Shortly after the <u>Pavlovskiy</u> decision, the Third Circuit did have an

opportunity to rule on a § 523(a)(6) issue and, although the opinion was not precedential, its citation

of <u>Conte</u> strongly suggests that the Third Circuit will retain the objective approach.  *See*, <u>In re

Granoff</u>, 250 Fed. Appx. 494 (Oct. 9, 2007).   Under the objective approach, sometimes called the

"implied malice" approach, an injury is willful and malicious "if the debtor caused harm through

a deliberate action with an objective substantial certainty of injury." <u>In re Peterson</u>, 332 B.R. 678,

682-83 (Bankr. D. Del. 2005).   The objective approach is still problematic,  however, because it

makes the test for malice virtually indistinguishable from the test for willfulness.   Lower courts in

this District have resolved that problem by recognizing that "the concept of malice has another

dimension – that the debtor's conduct be wrongful and without just cause or excuse, even in the

absence of personal hatred, spite, or ill-will."   <u>Viener v. Jacobs (In re Jacobs)</u>, 381 B.R. 128 (Bankr.

E.D. Pa. 2008); <u>In re Fechnay</u>, 425 B.R. 212, 230 (Bankr. E.D. Pa. 2010) ("With respect to the

second component, "malice," courts have interpreted this requirement as necessitating injuries that

are wrongful ....") (internal citations omitted); *see also*, 4 *Collier on Bankruptcy* ¶ 523.12[2] at 523-

92 (16th ed. 2009).  In <u>In re Long</u>,  the Eight Circuit long-ago recognized that the term malice must

denote "a heightened level of culpability" if it is to have any vitality apart from willfulness:

> Congress tells us in § 523(a)(6) that malice and willfulness are two different
> characteristics. They should not be lumped together to create an amorphous standard
> to prevent discharge for any conduct that may be judicially considered to be
> deplorable. We are convinced that if malice, as it is used in § 523(a)(6), is to have
> any meaning independent of willful it must apply only to conduct more culpable than
> that which is in reckless disregard of creditors' economic interests and expectancies,
> as distinguished from mere legal rights. Moreover, knowledge that legal rights are
> being violated is insufficient to establish malice, absent some additional "aggravated
> circumstances" ....

774 F.2d 875, 880-81 (8th Cir. 1985).

In this case, the evidence does not support a finding that Ms. Pearman acted with malice when she filed a complaint seeking to protect her copyright.  The Court cannot find that Ms. Pearman's protection of her copyright was wrongful because it concludes that Ms. Pearman harbored a genuine, albeit mistaken,  belief that she was the author of the Poem and had a right to copyright it. All of Ms. Pearman's actions follow a plausible progression from her mistaken belief that she wrote the Poem.  Ms. Pearman's actions simply do not meet the "heightened level of culpability" standard necessary to find malice.  Long at 881.

Ms. Pearman persuasively testified that she began composing the Poem in 1989 after her grandfather's death and completed it sometime after her grandmother's death a month later.  It is apparent that Ms. Pearman was mistaken in her belief that the words to the Poem were her own, but that is not determinative of whether she believed that the Poem was her original composition.  The progression of events lend credibility to her testimony; all of her actions subsequent to 1989 are consistent with the belief that she had written the Poem.  After completing the Poem, Ms. Pearman shared it with her family who all told her it was a wonderful tribute to her grandparents.  It was not until eight years later, in approximately 1997, that Ms. Pearman was encouraged by her family to submit her Poem for publication to the NPS, and as a result it was published in "A View From Afar."  There was no remuneration for that publication.  Ms. Pearman sought copyright protection only after the NPS encouraged her to do so.  The first time she sought payment for the Poem was sometime thereafter when a friend of Ms. Pearman's notified her that her Poem had been published in "Chicken Soup" without acknowledging her authorship.  Ms. Pearman credibly testified that she felt compelled to do so to protect the copyright.  Ms. Pearman notified the publisher that she held

the copyright to the Poem and the publisher offered her its standard payment of $500.  Ms. Pearman

did not seek a greater payment or threaten to sue the publisher for using her Poem without

attribution.  Ms. Pearman testified that she used the $500 to purchase memorial lights for her

Grandparents' grave.  Tellingly, Ms. Pearman made no further attempt to profit from her copyright

for the next ten years.  In 2008, when Ms. Pearman's mother told her about the Comfort Company

she investigated whether The Comfort Company might be using or would be interested in using her

Poem.  The Copyright Litigation that is at the heart of this matter then ensued.

        None of these actions suggest that Ms. Pearman was perpetrating a scam.  The time frames

alone militate against a finding that Ms. Pearman was attempting to gain financially from asserting

a copyright she knew to be invalid: she only received five hundred dollars over the course of

seventeen years.  Perhaps the single most compelling piece of evidence that Ms. Pearman was not

a scam artist seeking to profit from an illegitimate copyright is the fact that once her attorney

confronted her with irrefutable evidence that the Poem existed in the public domain long before

1989, she refrained from copyrighting another of her poems that had been submitted for publication

because she no longer felt she could rely on her own judgment.

        Despite finding that Ms. Pearman believed that she wrote the Poem, there are troubling

aspects to the facts presented.  Ms. Pearman testified that she occasionally  researched on the

internet to determine if anyone was violating her copyright. In doing that research, she apparently

did not bother to ascertain that no versions of the Poem that appeared on the internet pre-dated her

alleged authorship of the Poem.  Given the ease with which Kay Berry was able to find copies of

the Poem from the early 1960's,  it seems odd that Ms. Pearman never came across an earlier version

of the Poem that would cause her to question her firmly held belief that she was the author.

Ultimately, Ms. Pearman's negligent internet research is not determinative; at best, turning a blind eye to any evidence that the Poem was not hers can be described as reckless. Reckless behavior is not sufficient to establish a willful and malicious injury under § 523(a)(6). Kawaauhau v. Geiger, 523 U.S. 57, 64 (1998).

### Conclusion

Predictably, in the extant cases involving copyright and dischargeability, the debtor is the party that is alleged to have violated a copyright. *See, e.g.,* In re Barboza, 545 F.3d 702 (9th Cir. 2008). What is novel in this case is that the debtor is the holder of the alleged copyright and is being accused of willful and malicious behavior by trying to protect that copyright. In its complaint, Kay Berry identifies the filing of the Copyright Action as the moment of the willful and malicious injury. To properly evaluate that claim, however, the Court must look back to the moment when Ms. Pearson registered her copyright. If at that time Ms. Pearson believed she was legally justified in registering a copyright to the Poem, then all subsequent events naturally flowing from that moment - including the filing of the Copyright Action - cannot be considered malicious.

Kay Berry is understandably frustrated that it was forced to incur costs defending a copyright infringement action that was not based in reality. Many judgment creditors are frustrated when validly incurred debts are discharged by a bankruptcy filing. Nonetheless, the standards for non-dischargeability require more than a showing that the debt was legitimately incurred or that the creditor is frustrated. Kay Berry has not sustained its burden; it has demonstrated that Ms. Pearman's actions were willful, but not that they were malicious within the meaning of 11 U.S.C. § 523(a)(6). Judgment is denied on Count I of the Complaint. Given that ruling, Count II is moot. Count III will

12

be denied as the relief sought is not properly requested from this Court[1].  Ms. Pearman's counsel

should submit a form of order in accordance with this opinion.

*/s/ Kathryn C. Ferguson*
KATHRYN C. FERGUSON
US Bankruptcy Judge

Dated: June 23, 2010

---

[1]Count III is based on 17 U.S.C. § 508.  That statute provides that "[w]ithin one month after any final order or judgment is issued in the case, the clerk of the court shall notify the Register of it, sending with the notification a copy of the order or judgment together with the written opinion, if any, of the court."  11 U.S.C. § 508(b).  This Court did not enter a final order under the Copyright Act and is not in possession of the District Court's opinion. The relief requested should be directed to the Clerk of the District Court for the District of Massachusetts.